**Agnes REICH, Plaintiff,**

v.

**The NEW YORK HOSPITAL, Defendant.**

**80 Civ. 2603 (ADS).**

United States District Court, S. D. New York.

April 30, 1981.

Harold M. Weiner, New York City, for plaintiff.

Kelley Drye & Warren, Eugene T. D'Ablemont, Kenneth Kirschner, New York City, for defendant.

## OPINION AND ORDER

SOFAER, District Judge:

The defendant, New York Hospital has moved for an order dismissing this action, or for summary judgment against the plaintiff, Agnes Reich, on the grounds that: 1) plaintiff failed to file a timely charge with the Secretary of Labor pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; [1] 2) plain-

---

1. Section 623(a)(1) provides:

"It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any

tiff failed to allege in her complaint the necessary requisites of a suit under the ADEA; 3) there is no genuine issue of material fact to be tried with respect to defendant's articulated, legitimate, non-discriminatory reason for terminating plaintiff's employment; and 4) plaintiff's pendant cause of action fails to state a claim upon which relief may be granted.

The complaint charges the defendant with employment discrimination based on its dismissal of plaintiff from the position of X-ray technician in July 1978, and its refusal to reinstate her in January 1979. The first count alleges a violation of the ADEA in that the defendant's actions were based on plaintiff's age. The second count alleges a violation of the New York State Human Rights Law, N.Y.Exec.Law § 296(1) (McKinney). Plaintiff's deposition, affidavits by the plaintiff and defendant, and defendant's answers to plaintiff's interrogatories establish the following undisputed facts.

Agnes Reich began working at the New York Hospital as a secretary in 1944, when she was sixteen years old. She completed a hospital training program in radiology in 1949, and subsequently worked for the hospital as an X-ray technician. From 1960 until she left in 1978, Ms. Reich received annual salary increases. She ran the hospital's Vincent Astor Diagnostic Service, X-ray Division, for ten years; worked for several years in two different general areas; and starting in 1970 staffed the Fracture Service Division, known as "K–7" or "Whitney 7". Her work there included mammography studies in addition to regular follow-up of clinic fracture patients, post-surgical hip outpatients, and fracture patients from the emergency room. (Reich Dep. 27–40, D.Ex. 9)[2]

In 1974, a patient named Stella Marlow formally complained that Ms. Reich had verbally and physically abused her. Ms. Reich was notified of the complaint by her supervisor, Mr. Skuchko, and responded to it with a letter apparently stating that the hospital equipment required that the patient lie on her sutures in order to be X-rayed.[3] (Reich Aff. ¶ 7, Reich Dep. 42–43, Skuchko Aff. § 9 & Ex. B) Mr. Skuchko states that, in the following years, he cautioned Ms. Reich "on several occasions" to be careful in her handling of patients. Ms. Reich denies these warnings, and responds that

"[m]y workload was twice that of the other X-ray technicians in Whitney 7; I worked that service alone, without supervision, with post-operative patients who were always in great pain. I tried to be as gentle as possible while still doing my job. . . ."

(Reich Aff. § 11)

She also states:

[t]he fracture division grew so much that they had to get . . . mammography out of that area. The two couldn't be done and the fracture division . . . got so congested that there was . . . just double the amount of patients that was normally . . . you could handle—in fact tripled, I guess—it was much more than could be handled—the only help I had was always a student with me. . . .

(Reich Dep. 44–45)

In May 1977, Ms. Reich's "Performance Appraisal" for the year rated her "above standard," and described her as a "good technician." In the category "quantity of work," she received the highest of five possible ratings—"[c]onsistently turns out more than demands of the job"—and her evaluator added that she "keeps up well with heavy work load in K–7 Fracture

---

individual or otherwise discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's age. . . ."

**2.** References are indicated as follows: plaintiff's deposition, by "Reich Dep."; plaintiff's affidavit by "Reich Aff."; defendant's affidavit

by Mr. Skuchko, with exhibits, by "Skuchko Aff."; defendant's affidavit by Ms. Fuller, dated Jan. 9, 1981 by "Fuller Aff. I"; and affidavit by Ms. Fuller dated Jan. 30, 1981 by "Fuller Aff. II"; defendants exhibits by "D.Ex."

**3.** The hospital did not retain Ms. Reich's letter.

area." For "work management," her rating was "less than normal supervision required to keep pace with work flow ...," and the evaluator added "very little supervision in this area." For "extradepartmental relationships," however, she was rated as "overshy or overbearing in dealing with people. Manner and language imply lack of interest or sensitivity." Her evaluator added: "[p]erhaps it is the demands of the area but Miss Reich must show more consideration for patients than she has been." (Skuchko Ex. A)

Mr. Skuchko also claims that in October 1977, the physician in charge of the hospital's Fracture Service asked Mr. Skuchko to transfer Ms. Reich because of her abusive conduct toward patients. Mr. Skuchko claims that he could not transfer her because "[a]ll other departments refused to accept her because she treated patients badly." Ms. Reich denies this allegation. Indisputably, however, during October and November 1977, the hospital received three complaints from patients about Ms. Reich. A patient named Mulligan stated that Ms. Reich had been rude. Ms. Betty Shain complained that Ms. Reich verbally abused her, and treated her roughly, bruising her left elbow. Ms. Kathleen Cherry complained that Ms. Reich had treated her rudely and disrespectfully. The complaints are summarized in a report from the patient services administrator to Mr. Skuchko, the manager of radiology.[4] (Skuchko Aff. ¶¶ 12–13 & Ex. C, D)

Consequently, at the request of the head of the Fracture Service, Ms. Reich was transferred out of that department to another floor. She worked there, as an X-ray technician, for one week, and then submitted her resignation. At that point, Mr. Skuchko decided to allow her one more opportunity to continue working in the Frac-

ture Service. He issued her a formal written warning, pursuant to hospital personnel policies,[5] that stated: "[s]hould there ever be another complaint from a patient against Ms. Reich, it will result in her immediate dismissal." Ms. Reich signed the warning to acknowledge her understanding of it, and did not grieve or complain about it to anyone. (Reich Dep. 46–57, Skuchko Aff. ¶ 14 & Ex. E)

On June 26, 1978, Ms. Reich was the subject of a fifth complaint of abusive treatment. The mother of a child whom Ms. Reich had X-rayed reported that Ms. Reich dropped the child's broken arm on the X-ray table, and ignored his subsequent expressions of pain. The hospital immediately suspended Ms. Reich, pending an investigation of the complaint. Mr. Skuchko and a representative of the Personnel Department looked into the matter and concluded that the complaint was valid. On June 30, 1978, Ms. Reich was terminated, effective June 29, 1978. The hospital informed Ms. Reich of her termination on July 3, 1978. (Skuchko Aff. ¶ 15–17)

Ms. Reich had abdominal surgery in 1976, and, following her written warning in December 1977, she experienced abdominal pains and muscle spasms. Her doctor diagnosed these as a nervous condition and sent her to a psychiatrist associated with the hospital. He prescribed an anti-psychotic drug for Ms. Reich in May 1978. On July 27, 1978, Ms. Reich voluntarily admitted herself to the hospital's psychiatric clinic. She was suffering an adverse reaction to the drug and entered the hospital in order to withdraw from it. She remained there approximately eleven days. (D.Ex. 19, Reich Dep. 69–73)

During October and November 1978, Ms. Reich reapplied for an X-ray technician po-

---

4. One complaint was recorded on a hospital form, "Department Head's Report of Incident," by the head nurse on K–7. One was apparently reported orally to patient services.

5. The hospital's Personnel Policies and Procedures Manual: "Discipline," issued September 24, 1973, provides in Part I that disciplinary action may be invoked at any of the steps

listed. The second step listed is "written warning." Although I(2)(a)(i) states that the written warning "must specify ... the probationary period during which the warning is in effect," the prescribed form for the written warning provides a space for the "length of the probationary period (if applicable)." (S.Aff.Ex. E and F)

sition at the hospital. She allegedly understood, from a series of telephone conversations with Ms. Fuller of the Personnel Department, at first, that the hospital was "considering" rehiring her, then, "that they were considering it more and there is a strong possibility that" she would be reinstated, and, finally, that she should not "bother doing any job hunting," and that she could "come back here the first of the year." In January, the hospital requested Ms. Reich to provide a letter from her psychiatrist indicating that she was well. He wrote on January 4, 1979 that she was "able to return to work and resume her full duties." A couple of weeks after receiving the letter, the hospital denied plaintiff reinstatement in her position but suggested that she might work for the hospital as a file clerk. Ms. Reich refused to pursue that possibility. (Reich Dep. 97–99, 129–30, Fuller Aff. II ¶ 5, D.Ex. 24)

Ms. Reich collected ninety-five dollars per month in disability benefits from July 1978 to January 1979, and one hundred and twenty-five dollars per week in unemployment compensation from January 21, 1979 to July 1979. In October 1979 she worked for about four or five weeks for a physician as a nurse assistant and bookkeeper. Her employment ended due to what she describes as a mutual dissatisfaction. Ms. Reich attended Marymount College for about a year beginning March 1979 and earned a business management certificate. (Reich Dep. 75, 76, 88–90)

6. That section provides in relevant part:
(d) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—
(1) within 180 days after the alleged unlawful practice occurred; or
(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
The Supreme Court held in *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) that, in "deferral" states such as New York, plaintiffs in Title VII actions may file a complaint within 300 days of the practice

On March 20, 1979, plaintiff, assisted by counsel, filed a complaint with the New York State Division of Human Rights ("SDHR") alleging that the defendant hospital discriminated against her because of her age and mental disability. That claim is still pending. On the same day, she mailed a copy of the charge to the Secretary of Labor as to initiate her claim under the ADEA. The Secretary received the claim on March 26, 1979. On May 7, 1980, Ms. Reich filed the complaint in this action. (Reich Dep. 76–80, D.Ex. 20)

## I. Timeliness

■ Defendant has moved to dismiss plaintiff's complaint for failure to file her charge of age discrimination with the Secretary of Labor within 180 days of the alleged unlawful practice, as required by 29 U.S.C. § 626(d).[6] "Determining the timeliness of" an employment discrimination complaint requires the court "to identify precisely the 'unlawful employment practice' of which [plaintiff] complains." *Delaware State College v. Ricks,* —— U.S. ——, ——, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Defendant argues that the unlawful discrimination of which Ms. Reich complains in her federal charge is her dismissal by the hospital in July 1978. Plaintiff's complaint, however, liberally construed, alleges in ¶ 12 and ¶ 13 two discriminatory actions in violation of the ADEA: her dismissal and defendant's refusal to reinstate her "since January 4, 1979."[7]

of discrimination, as long as it is filed with the state agency within 240 days of the practice.

7. Defendant's statement pursuant to Rule 9(g) at the local rules, in ¶ 1 and ¶ 2, states that the violation of the ADEA consists solely in defendant's dismissal of plaintiff, whereas the violation of the state statute is based on the refusal to reinstate plaintiff. Because plaintiff did not submit a 9(g) statement, the defendant's statement is taken as admitted for the purpose of summary judgment. *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir. 1978), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979). On the issue of timeliness, however, a court must read the plaintiff's complaint liberally.

Plaintiff indicates that the hospital finally refused her reinstatement some time after she

Plaintiff states in her deposition that she did not seek employment with the hospital after she was finally denied reinstatement in January 1979. She cannot rely, therefore, on any implied refusal to reinstate her after that time as an unlawful practice commencing the 180-day period. *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). Plaintiff's suggestion that a refusal to reinstate is a "continuing" act of discrimination is untenable. (Memorandum of Law, p. 5) On the other hand, the hospital's refusal to reinstate Ms. Reich in January 1979 was a discrete action, separate from its dismissal of her, and neither a continuation nor a mere effect of a past discrimination. It allegedly occurred as a result of a request by one of defendant's authorized employees that plaintiff apply for reemployment. The 180-day period therefore commenced with the refusal to reinstate plaintiff in January 1979. Because Ms. Reich's charge was filed with the Secretary of Labor on March 26, 1979, or 81 days after the hospital's refusal to reinstate her on January 4, 1979, the charge was timely.

## II. *Summary Judgment*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established a three-step presentation of proof "as a sensible, orderly way to evaluate the evidence," in an individual employment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). This approach is "an appropriate and workable formula for the trial of age discrimination claims under the ADEA," because it recognizes that "direct evidence of discrimination is likely to be unavailable and ... the employer has the best access to the reasons that prompted him to fire ... the com-

plainant." *Loeb v. Textron, Inc.* 600 F.2d 1003, 1016–17 (1st Cir. 1979).

■ Under this approach, a plaintiff has the burden of making out a *prima facie* case of discrimination by showing that: 1) she is in the protected age group (between the ages of 40 and 70); 2) the defendant employer dismissed her from or refused to hire her into a job; 3) she was qualified for the position from which she was excluded; and 4) the employer filled the position with someone with the same qualifications as the plaintiff but not in the protected age group. If plaintiff makes out a *prima facie* case, the burden shifts to defendant to produce evidence of a legitimate, non-discriminatory reason for its employment decision. If defendant succeeds in rebutting the plaintiff's *prima facie* case with a non-discriminatory reason, the burden shifts back to plaintiff to show that the reason given is merely a pretext for discrimination.

The defendant hospital has moved for summary judgment on the grounds that plaintiff has not alleged a *prima facie* case of age discrimination, and further that she does not adequately dispute the facts supporting defendant's legitimate non-discriminatory reason for the dismissal and subsequent refusal to rehire.

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment:

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Nothing in this rule suggests that it cannot be applied to the evidence in accordance with the steps outlined in *McDonnell Douglas*, and found applicable to the ADEA by *Loeb*, although at each step in the analysis no genuine issue of material fact may be resolved without a trial.

---

submitted her psychiatrist's letter on January 4, 1979. Because there is no evidence of a specific date of this final decision by the hospi-

tal, January 4, 1979 is taken as the date of refusal to reinstate plaintiff.

■ Plaintiff has adduced sufficient evidence to justify a trial on whether she can establish a *prima facie* case of age discrimination. Her complaint does not allege her age, or her qualifications for the position of X-ray technician. Her deposition shows, however, that she was fifty years old when she was dismissed and that she was replaced by a man younger than forty.[8] There is no question that Ms. Reich was dismissed from and not reinstated in her position. Whether plaintiff would be able to establish that she is qualified for the position in question is less certain. Ms. Reich does not deny that, in the last four years of her employment, five patients complained of her conduct, and that she was dismissed after receiving a written warning, which she understood. She asserts, however, that the "quality of [her] work was never in question," and she contests the accuracy and veracity of all the complaints concerning her conduct, although in vague and conclusory terms. (Reich Aff. ¶¶ 7–11, Skuchko Ex. A, Reich Dep. 54–55) A plaintiff in her position cannot be denied an opportunity "to show that the employer's demands were illegitimate in the sense of being unfair or arbitrary," since an employer "may not have unreasonable expectations . . . ." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). *See also, Wade v. New York Telephone Co.*, 500 F.Supp. 1170, 1175–76 (S.D.N.Y.1980).

Ms. Reich has, in effect, questioned the legitimacy of her employer's expectations. Her deposition and affidavit, together with the hospital's performance evaluation, indicate that the hospital may have made unrealistic demands in imposing an excessive workload and insufficient supervision, and in making as a condition of continued employment that she never again be subject of a patient complaint. (Skuchko Ex. A, Reich Aff. ¶ 1)

The defendant hospital may still be entitled to summary judgment if it meets its burden of "articulat[ing] some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, *Loeb v. Textron, Inc., supra,* 600 F.2d at 1011. After a trial, this burden does not require a defendant to prove the existence of a non-discriminatory reason by even a preponderance of the evidence. The Supreme Court recently held in a sex discrimination case, that to rebut the plaintiff's *prima facie* case:

> [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.

*Texas Dep't of Community Affairs v. Burdine,* —— U.S. ——, ——, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnotes omitted).

■ A defendant that moves for summary judgment, however, must show that no genuine issue of material fact exists as to its ability to establish a non-discriminatory reason. In this context, any doubt as to a defendant's capacity to raise a genuine issue of fact as to its motivation would have to be resolved against the defendant.

New York Hospital has, in this case, presented overwhelming evidence of a non-discriminatory reason for dismissal. Patient complaints led in due course to a formal written warning, authorized by hospital policies and procedures. The alleged and

---

**8.** Rule 56(e) of the Federal Rules of Civil Procedure states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to matters stated therein." Although plaintiff based the statement in her affidavit that she was replaced by Bill Winkler, a man in his twenties, "on information and belief," her deposition confirms that she was replaced by this individual.

apparent purpose of plaintiff's dismissal was to maintain the quality of patient care and to avoid the legal liability to which her continued employment might subject the hospital. Plaintiff's supervisor, Mr. Skuchko, stated that she was dismissed solely for her abusive conduct towards patients and in the interests of patient care, that she was the subject of many more complaints than any other X-ray technician, and that after she was replaced there were no further complaints in the fracture service. (Skuchko Aff. ¶ 11 & 19). Certainly, at any trial, defendant would be able to establish its reliance upon the non-discriminatory motive it has advanced; indeed, it has overwhelmingly established the existence of a non-discriminatory motive. .

■ Although the defendant hospital has established a non-discriminatory motive, plaintiff is entitled to an opportunity to prove that defendant's non-discriminatory reasons are merely a pretext for actions based on plaintiff's age. To justify summary judgment in its favor, defendant must establish the absence of a genuine issue as to any material fact with respect to Ms. Reich's claim that the hospital's stated reason for her rejection was in fact pretext. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804–806, 93 S.Ct. at 1825–26; *Loeb v. Textron, Inc., supra,* 600 F.2d at 1011. While this is a heavy burden, a plaintiff's response to such a motion must be evaluated in light of the governing rule of law under the ADEA that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time[s] with the plaintiff...." *Texas Dep't of Community Affairs v. Burdine, supra,* 101 S.Ct. at 1093. And, in contrast to the trial context, where a plaintiff can rely on cross-examination of the defendant together with other evidence of the *prima facie* case to prove a pretext by a preponderance of the

evidence, *id.* 101 S.Ct. at 1092–94; *Wilson v. Sealtest Foods Division of Kraftco Corp.,* 501 F.2d 84, 86 (5th Cir. 1974), the plaintiff's showing of pretext in the summary judgment context must meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of his pleading, but *his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be enforced against him.[9]

(Emphasis added.)

Ms. Reich seeks to establish a genuine dispute of material fact concerning defendant's motive by claiming that the complaints relied upon by the hospital were fraudulent or baseless; that other hospital employees, not in the protected group, have not been discharged because of patient complaints; and that the hospital had substantial economic motives for discharging an employee with plaintiff's seniority, both as to salary differential and pension benefits.

Plaintiff's arguments concerning the validity of the patient complaints are mere assertions, without any factual support. Ms. Reich alleges that the patient complaint she received in 1978 was a fraud and that a student who witnessed the incident would testify on her behalf at trial. Her attorney claims in his affidavit that a student witness to the final incident wrote a report to the hospital. But plaintiff's affidavits fail to set forth any facts relating to these claims. Neither affidavit identifies the students involved, and plaintiff's interrogatories to the defendant do not even inquire into the incidents. The plaintiff claims that the hospital simultaneously interviewed the

---

**9.** The fact that plaintiff did not depose the hospital is not decisive of the question of defendant's summary judgment. She was afforded a full opportunity to discover evidence in any manner authorized by the federal rules.

three patients who complained about her performance in 1977, but she does not indicate how this argument, if true, undermines the authenticity of the patient reports. Plaintiff admits that the reason given for her dismissal in July 1978, and for her transfer in 1977, was patient complaints and that the reason she was not reinstated was that she "should not be around patients." She states that there are no specific facts or circumstances on which she bases her claim of age discrimination and that no one in the hospital has ever said anything to indicate that she was terminated for any other reason than as a result of patient complaints. (Reich Dep. 58, 92, 47, 97–98, 65, 106–07)

Even if plaintiff has raised some genuine dispute as to the validity of one or more of the complaints, her burden here is far greater. She must raise a genuine dispute as to the hospital's claim that it relied on the complaints it received, however unmeritorious or unjustified the complaints may have been. This she has failed to do.

*McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825, and *Loeb Textron, Inc., supra,* 600 F.2d at 1014, permit an employee to demonstrate pretext through comparative evidence—proof that other employees who have similar work records as the plaintiff but are not in the protected (age) group, were retained while plaintiff was not. In the instant case, Ms. Reich speculates that other X-ray technicians received as many complaints per patient as she did, but were not dismissed. Her attorney asserts, moreover, that there is an issue with regard to "whether or not plaintiff in fact had more complaints than any other X-ray technicians." Reich admits, on the other hand, that she knows of no employee who received as many as four complaints, and that she does know of one employee who is over forty years old who received complaints and is still employed. She does not submit a single fact to dispute the hospital's evidence that in the past three years it has terminated four other employees for patient complaints, all of whom were under forty. (Reich Aff. ¶¶ 11 & 14, Fuller Aff. ¶ 18, Reich Dep. 139–40) As Judge Carter stated in *Wade v. New York Telephone Co., supra,* 500 F.Supp. at 1176, where plaintiff's response to a summary judgment motion was "clearly inadequate," because she "stated no factual basis for her claim," her counsel's affidavit, citing no names or facts about allegedly favored employees, could be "disregarded in determining whether genuine issues of fact exist to be tried. . . ."

Finally, plaintiff's claim that the hospital's actual motive was economic has been refuted by detailed, factual evidence submitted by defendant. Ms. Fuller, the hospital's personnel officer, stated in her affidavit: (1) that the average salary of an X-ray technician at the hospital at the time of plaintiff's dismissal was $311.09 a week while plaintiff's salary was $352.14 a week, and four X-ray technicians, two of whom were over forty years old, received higher salaries than the plaintiff; (2) that the hospital's pension program is a defined benefit plan, under which the hospital's contribution is not based on a percentage of each employee's salary and the plaintiff's dismissal had no effect on the hospital's total contributions; (3) that at least one-half of the hospital's employees in 1978, some 2,650 persons, were over 40; (4) that Ms. Reich's termination did not affect her right to obtain a pension, and her seniority did not entitle her to any more benefits than other X-ray technicians with only a year's experience; and (5) that the hospital subjects itself to great potential liability by allowing an employee who has been the subject of patient complaints of abusive treatment to continue employment. (Fuller I Aff.)

In considering a motion for summary judgment, a court must draw all inferences in favor of the non-moving party, *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir. 1980); *Cali v. Eastern Airlines, Inc.* 442 F.2d 65 (2d Cir. 1971); *Empire Electronics Co. v. United States,*

311 F.2d 175 (2d Cir. 1962), and must be especially reluctant to grant the motion where intent is in question, *Economou v. Butz*, 84 F.R.D. 678, 681 (S.D.N.Y.1979). Nevertheless:

> [a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.

*Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972). When, in fact, nothing remains to be tried, a defendant has the right to judgment without the expense of a trial. Courts must protect defendants from oppressive and meritless litigation. *See Kremer v. Chemical Construction Corp.*, 477 F.Supp. 587, 594 (S.D.N.Y.1979), *aff'd*, 623 F.2d 786 (2d Cir. 1980), petition for certiorari filed January 13, 1981 (No. 80–6045). Frequently, as in this case, the resources that a defendant would be forced to expend on such litigation could otherwise be devoted to important, public concerns.

■ However one might view the unfortunate circumstances that led to Ms. Reich's dismissal after 34 years of service, "[s]ection 621 does not cast upon the court the duty of determining that a discharge was, for reasons other than age, a justifiable discharge. It serves only to prevent discharge because of age alone." *Brennan v. Reynolds & Co.*, 367 F.Supp. 440, 444 (N.D. Ill.1973). In this case, Ms. Reich has presented no evidence that she was discriminated against on the basis of age and no facts from which the court could even infer age discrimination. Indeed, the hospital offered to rehire her in a clerical position, but she insists on working as an X-ray technician. "Once the burden of showing that a genuine dispute exists shifts to the non-moving party, he cannot meet this burden merely by asserting that a genuine issue exists...." *Wade v. New York Telephone Co., supra*, 500 F.Supp. at 177; *Locke v. Commercial Union Insurance Co.*, 24 Fair Empl.Prac.Cas. 1098, 1100 (W.D.Ky.1980).[10] *See also Quinn v. Syracuse Model Neighborhood Corp., supra*, 613 F.2d at 445.

■ Plaintiff also alleges that her dismissal and the hospital's refusal to reinstate her violate the New York State Human Rights Law, N.Y.Exec.Law § 296 (1) (McKinney). Since defendant is entitled to summary judgment on the federal claim, and no exceptional circumstances exist, an exercise of pendant jurisdiction is unwarranted.[11] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir. 1974); *Brown v. New Haven Civil Service Board*, 474 F.Supp. 1256, 1265 (D.Conn.1979).

The Clerk will enter judgment in defendant's behalf, with prejudice and costs. Fed. R.Civ.P. 56(c).

So Ordered.

---

**10.** Defendant's request for attorney's fees is denied. Only in rare cases could such a request be justified without a trial, at which the plaintiff's good faith could be appraised. *See Christiansburg Garment Co., v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

**11.** In fact, Ms. Reich's charge is still pending before the SDHR; she may therefore have elected her remedy for the violation of section 296(1), thereby precluding a suit in court under section 296(9). *Riepe v. Dun & Bradstreet, Inc.*, 19 EDP ¶ 9029 (E.D.N.Y.1979), *Emil v. Dewey*, 49 N.Y.2d 968, 969, 428 N.Y.S.2d 887, 887, 406 N.E.2d 744, 744 (1980).