Daniel P. CORRIGAN and James
McQuade, Plaintiffs,

v.

NEW YORK UNIVERSITY MEDICAL
CENTER, Defendant.

No. 83 Civ. 6360 (WCC).

United States District Court,
S.D. New York.

March 28, 1985.

Harold M. Weiner, New York City, for plaintiffs.

S. Andrew Schaffer, New York City, for defendant; Terrance J. Nolan, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This is an action commenced pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by plaintiffs Daniel P. Corrigan ("Corrigan") and James McQuade ("McQuade") against the New York University Medical Center ("the Medical Center"). Corrigan and McQuade allege that they both applied for positions as nursing attendants/orderlies at the Medical Center, and that the Medical Center refused to hire them because of their ages. At the time of the alleged discrimination, Corrigan was fifty-one and McQuade was fifty-three; the ADEA establishes a class of protected individuals between the ages of forty and seventy.

According to the complaint, both plaintiffs were interviewed by Kathleen Ames ("Ames"), the staffing coordinator in defendant's department of nursing, and both were asked their ages during the interview. Each "perceived a chilling in the interview climate" after he responded to this question, and several days later, each was rejected. Complaint at ¶¶ 8, 13.

The matter is now before the Court on the Medical Center's motion for summary judgment. Defendant contends that it had several reasons for refusing to offer plaintiffs employment, none of which was related to their ages. The Medical Center, through the affidavit of Kathleen Ames, denies that either plaintiff was asked his age during his interview. Ames Aff. at ¶ 2. It insists that neither plaintiff made a favorable impression, that each was vague about his previous employment history, and that both repeatedly expressed dissatisfac-

tion with previous positions in which they were required to work with Filipinos who insisted on speaking Tagalog rather than English in plaintiffs' presence. Brantley Aff. at ¶¶ 4, 5; Sanchez Aff. at ¶¶ 4, 5; Ames Aff. at ¶¶ 4, 5, 8, 9. According to defendant, these factors rendered Corrigan and McQuade unqualified and undesirable for the position of nursing attendant. Ames Aff. at ¶ 13.

Moreover, the Medical Center asserts that Kathleen Ames learned shortly after interviewing plaintiffs that the temporary position for which they had applied was no longer open; apparently, the woman whose position was to be filled temporarily had been on medical disability leave, and she unexpectedly announced she would be returning to work a few days later. Ames Aff. at ¶ 10. In further support of the motion, Ames avers that the next two openings for nursing attendants were filled by individuals over the age of forty. *Id.* at ¶ 9. Defendant argues, on the basis of all these facts, that plaintiffs cannot establish a *prima facie* case of age discrimination, and that defendant is therefore entitled to summary judgment. For the reasons below, I must agree.

*Legal Standards*

Summary judgment is appropriate only where the Court is satisfied there exists no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. Rule 56(e) provides for the submission of affidavits supporting and opposing summary judgment, made on personal knowledge and setting forth such facts as would be admissible in evidence. By considering these affidavits and other relevant documentary materials, the Court can determine whether the nonmoving party has any real support for its version of the facts. Rule 56(e) further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Although these principles can be simply stated, they are not always easily applied in the context of employment discrimination actions. This is because the United States Supreme Court has established a three-step process for presenting proof and evaluating evidence at the trial of Title VII claims, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and a court's summary judgment analysis must therefore be tailored to reflect this framework.

▮ Under *McDonnell Douglas*, as applied to ADEA cases, a plaintiff has the burden of making out a *prima facie* case of discrimination by showing: (1) that he is in the protected age group; (2) that he applied and was qualified for a job for which the employer sought applicants; (3) that he was rejected; and (4) that after his rejection, the position remained open and the employer continued to seek applicants with the same qualifications, or filled the position with someone outside the protected age group. *Id.* at 802, 93 S.Ct. at 1824; *see also Reich v. New York Hospital*, 513 F.Supp. 854, 859 (S.D.N.Y.1981). The *prima facie* showing is designed to set forth "proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not those actions were bottomed on impermissible considerations." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

▮ If the plaintiff makes out a *prima facie* case, the burden of production shifts to the defendant to come forward with some evidence of a legitimate, non-discriminatory reason for its employment decision. If the defendant succeeds in rebutting the *prima facie* case, the burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason proffered is merely a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

*Discussion*

As noted above, the principles governing summary judgment can be applied to claims brought under Title VII. However, it is necessary for a court considering such a motion to determine, as to each of the three steps in the *McDonnell Douglas* formulation, whether there exists a genuine issue with respect to any material fact. In the context of this particular case, then, defendant must establish the absence of any genuine issue with respect to whether Corrigan and McQuade can make out all the elements of a *prima facie* case. *Reich*, 513 F.Supp. at 860. Of course, the Court must draw all inferences in favor of plaintiffs, as they are the nonmoving parties. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980).

There is no doubt but that Corrigan and McQuade would be able to establish two of the four *McDonnell Douglas* elements; both men were between the ages of forty and seventy when the alleged discrimination occurred, and both were rejected after applying for employment with defendant. Whether plaintiffs would be able to demonstrate their qualifications for the position is far from certain; however, I am satisfied for present purposes that granting summary judgment in favor of defendant on this point would be inappropriate.[1] I must look,

---

1. In order to create an inference that defendant's decision not to offer plaintiffs employment was motivated by discriminatory animus, plaintiffs have urged the Court to look only at such information relating to plaintiffs' qualifications as was before the Medical Center when the employment decision was made. Although plaintiffs have not denied telling their interviewers of difficulties in getting along with co-workers, and have not rebutted defendant's contention that their applications were incomplete, they are correct that the Court could not possibly find, on the basis of the undisputed information relied on by the Medical Center in making its decision, that no genuine factual issue exists with respect to their qualifications.

then, to the fourth and final issue in a *prima facie* case: whether the position in question remained open and the Medical Center sought other applicants after rejecting plaintiffs, or whether the Medical Center filled the position with someone outside the protected age group.

■ Defendant asserts that plaintiffs cannot establish the final element because the temporary full-time position for which they applied dematerialized before any action was taken on their applications. The affidavits of Angelyce Brantley ("Brantley") and Nancy Sanchez ("Sanchez"), both of whom are employed in defendant's personnel department, indicate that Corrigan and McQuade were referred to the hospital by District 1199 of the National Union of Hospital and Health Care Employees ("the Union"), and that the full-time position for which they applied had been temporarily vacated by an employee on medical disability leave. Sanchez Aff. at ¶ 6; Brantley Aff. at ¶ 3. Sanchez conducted a preliminary screening interview of McQuade on or about March 30, 1982, and Brantley interviewed Corrigan on or about March 31, 1982.

Plaintiffs were referred from the personnel department to Kathleen Ames, whose affidavit states that she was seeking to fill a position temporarily vacated by Jacqueline Armstrong. Ames Aff. at ¶¶ 3, 7. Defendant's Exhibit S, a copy of the Employee Requisition Form signed by Ames on March 23, 1982 requesting a temporary full-time employee to replace Armstrong, supports this contention. Ames interviewed Corrigan on April 19, 1982 and McQuade the following day; she told them to contact her by telephone on April 23rd regarding the status of their applications. Ames Aff. at ¶¶ 3, 5, 7, 9.

According to Ames, she was notified sometime before speaking with plaintiffs on April 23rd that Jacqueline Armstrong would be returning to work on April 27, 1982. Ames Aff. at ¶ 10. The fact of Armstrong's return is documented by defendant's Exhibit U, a Disability and Workmen's Compensation Form. In any event, when plaintiffs called Ames on April 23rd, she advised them that the position was no longer open.

■ Plaintiffs' affidavits state that Corrigan and McQuade were informed by the Union that "the jobs [they] were applying for were both full and part time." Corrigan Aff. at ¶ 7. They aver, moreover, that the Union's referral card listed the job as "T/P," meaning there were temporary and permanent jobs available. *Id.* The first contention is inadmissible as hearsay, at least for purposes of establishing the availability of other positions or the fact that the Medical Center solicited applicants. As such, it cannot be used under Rule 56(e) to stave off summary judgment. The second contention is belied by defendant's Exhibit T, a photocopy of the Union's referral slip for McQuade, which reflects only a full-time temporary nursing attendant position at the Medical Center. For these reasons, I conclude that there exist no genuine issues with respect to whether plaintiffs applied for a particular position, and whether that position subsequently became unavailable. Thus, at best, plaintiffs could hope to establish that if there had been an opening, they would have been denied the

---

On the other hand, defendant has properly noted that in order for plaintiffs to prevail at trial, they will have to demonstrate that they are, indeed, qualified. *See East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 404 n. 9, 97 S.Ct. 1891, 1897 n. 9, 52 L.Ed.2d 453 (1977) ("Even assuming, *arguendo,* that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the [plaintiffs] had not been injured because they were not qualified and would not have been hired in any event.") Thus, in considering this motion, the Court may examine all available information regarding plaintiffs' qualifications, whether elicited before or after the employment decision.

Some of the information presented by defendant with the intent of demonstrating plaintiffs' lack of qualifications is quite damaging, and the question whether the Court could find Corrigan and McQuade unqualified as a matter of law is a close one. Nonetheless, plaintiffs have contested the validity of much of the information, and I am unwilling to conclude that summary judgment is appropriate on the basis of the uncontested information.

job because of their ages. Certainly such a claim is not actionable under the ADEA.

One additional point should be noted. Defendant has never taken the position that plaintiffs would have been hired but for the evaporation of Jacqueline Armstrong's temporary vacancy. Indeed, Kathleen Ames admits having decided not to hire Corrigan and McQuade even before she learned that Armstrong would be returning to work. Ames Aff. at ¶¶ 6, 10. While plaintiffs might have wished to use this admission to create an inference that they were impermissibly denied consideration for subsequent vacancies, such an argument would not satisfy the *prima facie* requirement because, according to Ames, the next available openings for nursing attendants were filled by women forty-one and fifty-three years old. Ames Aff. at ¶ 9. Thus, notwithstanding Corrigan's conclusory allegation that "there were and have been literally dozens of jobs the defendant could have given [plaintiffs]," Corrigan Aff. at ¶ 22, and further notwithstanding the considerable discovery already undertaken in this action, plaintiffs have not produced a scintilla of evidence giving rise to an inference of discriminatory animus on the part of the Medical Center. Therefore, I am satisfied that no genuine dispute exists as to plaintiffs' inability to make out a *prima facie* case, and that summary judgment is appropriate.

■ Defendant's motion for an award of attorney's fees as the prevailing party in this action is denied. Although the Court has concluded that plaintiffs would not be able to make out a *prima facie* case if this matter were to go to trial, it appears that the evidence upon which the Court primarily based this conclusion—proof that Jacqueline Armstrong returned to work unexpectedly, thereby filling the "vacancy" in question, and that the next available nursing attendant positions were filled by members of the class protected under the ADEA—was only elicited in the context of this motion for summary judgment. Indeed, defendant's Exhibits S, T and U, all cited by the Court above, were provided only in reply to plaintiffs' papers in opposition to the motion. While I recognize the burden placed on parties who are forced to engage in substantial motion practice before unmeritorious claims are disposed of, I am not convinced that plaintiffs persisted in maintaining an unreasonable position and thereby increased expenses to defendant after they should have realized the flaws in their case.

Accordingly, defendant's motion for summary judgment is granted, and each party is to pay its own attorney's fees. The Clerk of the Court is directed to enter judgment in favor of defendant.

SO ORDERED.