Irwin STERN, Plaintiff,

v.

**The TRUSTEES OF COLUMBIA UNIVERSITY IN the CITY OF NEW YORK, Defendants.**

**No. 94 Civ. 9047 (HB).**

United States District Court,
S.D. New York.

Nov. 3, 1995.

Roy Karlin, Shapiro, Beilly, Rosenberg, Albert & Fox, New York City, for Plaintiff.

Mark L. Goldstein, Goldstein & Morris, New York City, for Defendants.

### OPINION AND ORDER

BAER, District Judge.[1]

Plaintiff filed this claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, alleging that he was denied permanent appointment as Director of the Spanish Language Program at Columbia University because of his national origin when a minority candidate was selected for the position. Defendant moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure asserting that the plaintiff's claim is devoid of any triable issue of fact. *Fed.R.Civ.P.* 56(c).

Defendant's motion was made on submission. For the reasons which follow, I hereby grant defendant's motion for summary judgment and dismiss plaintiff's complaint.

### I. Facts

Plaintiff Irwin Stern, an American of Eastern European descent worked as a part-time language instructor in defendant Columbia University's Department of Spanish and Portuguese ("Department") since 1978. After the Director of the Spanish Language Program resigned during the Spring 1991 aca-

---

1. Craig Ascher, an intern in my chambers and a second-year law student at the Fordham University School of Law, aided in the preparation of this Opinion and Order.

demic term, the University selected plaintiff to fill the position for the 1991–92 academic year on an interim basis. University policy provides interim positions are not "renewable without a complete search in accordance with the University's Affirmative Action Program." Meisel Aff. para. 5. The University reappointed plaintiff for a second year, 1992–93, as interim director under the same conditions.

In 1993, the Department decided to fill the position permanently. The Department conducted an open search in accordance with its policy. Prior to the search, the Vice President for Arts and Sciences, Martin Meisel, attempted to have another faculty member, Frances Boyd, a woman, appointed to the position without a search. After the Department denied Mr. Meisel's attempt, he appointed a five member faculty committee to conduct an open search. Of the sixty-three applicants responding to an ad for the position, thirty-five were Latino. The committee invited three candidates including plaintiff, for day-long interviews during which each candidate was to teach a model class. Prior to the completion of the interview process one of the invited candidates accepted another position and dropped out of contention. The search committee then selected Augustus Puleo, an American of Hispanic national origin, as an additional candidate.

The committee offered the position to Mr. Puleo subject to the approval of the University Affirmative Action Monitoring Committee in accordance with Columbia's hiring policies. On May 20, 1993, the Committee approved Mr. Puleo.

## II. *Discussion*

■ A moving party is entitled to summary judgment pursuant to Rule 56(c) if, "when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Cianfrano v. Babbitt,* 851 F.Supp. 41, 44 (N.D.N.Y.1994); *see Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There need be evidence of a disputed issue of fact for the nonmovant to survive summary judgment. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1985). "Summary judgment is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Federal Rules of Civil Procedure 1).

■ The Second Circuit stated that "when deciding whether [summary judgment] should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when ... its intent is at issue." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994) (citations omitted). However, it is not a hard and fast rule that summary judgment is precluded in employment discrimination cases. *See McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (2d Cir.1994) (holding summary judgment is available in employment discrimination cases). A district judge must "exercise [the] decision making authority entrusted to him [or her]." *Id.* at 68.

■ In the case at bar, summary judgment is proper even though the plaintiff asserts a discrimination claim. A plaintiff's burden to defeat summary judgment is to produce *de minimis* evidence in opposition of the movant's claim that there are no triable factual issues. *Goenaga v. March of Dimes Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995). "Nonetheless, the plaintiff cannot meet this burden through reliance on unsupported assertions.... The motion 'will not be defeated merely ... on the basis of conjecture....'" *Id.* (quoting *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991)).

■ In the case at bar, plaintiff claims that defendant discriminated against him (by not appointing plaintiff to the position of Director) in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C.

§ 2000e, *et seq.*, which states in relevant part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... national origin." The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) set out the test by which a Title VII claim must be proven. Plaintiff must first establish a prima facie case of discrimination. If plaintiff does so, the burden shifts and the employer must proffer a "legitimate, non-discriminatory reason" for the challenged action. If the defendant succeeds, the plaintiff must then put forth evidence to prove that defendant's offered reasons were a pretext for discrimination. *See id.; see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

"[F]or a plaintiff to make out a prima facie case of discriminatory [denial of employment], he must show that: (1) he belongs to a protected class; (2) his job performance was satisfactory; (3) he was denied employment; (4) the discharge occurred in circumstances giving rise to an inference of racial discrimination." *Cianfrano v. Babbitt*, 851 F.Supp. 41, 45 (N.D.N.Y.1994) (citations omitted); *see also Dister v. Continental Group Inc.*, 859 F.2d 1108, 1114–15 (2d Cir. 1988).

If a prima facie case is established, defendant need only "bring forth evidence that they acted on a neutral basis" to shift the burden back to the plaintiff. *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir.1980). The defendant does "not have the burden of establishing that their basis was sound; rather the burden then falls on the plaintiff to demonstrate that it is pretextual." *Id.* (footnote omitted).

In the case at bar, plaintiff can establish his prima facie case. "The nature of plaintiff's burden of proof at the prima facie stage is *de minimis.*" *Dister*, 859 F.2d at 1114 (citation omitted). Plaintiff, as a white male, belongs to a protected class. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976); *see also Silver v. City*

*University of New York*, 767 F.Supp. 494, 497 (S.D.N.Y.1991). Both defendant and plaintiff agree that plaintiff's performance was satisfactory. Plaintiff was denied permanent appointment to the position of director. As to the final element, if viewed in the light most favorable to the plaintiff, it is not impossible that one could infer from the circumstances that the plaintiff was discriminated against.

The burden then shifts to the defendant. Defendant must proffer a legitimate, nondiscriminatory reason for nonappointment. In the instant case, defendant has put forth documentary evidence to rebut plaintiff's claims of unequal treatment and argues that it has the right as an employer to hire the candidate it feels is best qualified for the position. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Defendant does not have to convince the court that the given reason was the actual reason, only that it was "racially neutral." *Cianfrano*, 851 F.Supp. at 46.

Finally, the burden shifts to the plaintiff to prove defendant's actions were a pretext for discrimination. On this score plaintiff contends: (1) he has the qualifications; (2) defendant's affirmative action policy; (3) the irregular search procedures; and (4) rumors within the department.

First, plaintiff argues that because his work as acting director was satisfactory, this is enough to defeat summary judgment. This argument misses the point. The issue is not qualifications but discrimination. Further, a court will "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale*, 797 F.2d at 464 (citations omitted) (affirming summary judgment in an age discrimination case).

Plaintiff also argues that defendant's Minority Incentive Fund (a University program encouraging the hiring of minorities by, among other things, subsidizing a portion of selected minority faculty members' salaries), and defendant's affirmative action policy raise a triable issue in this case because both go toward proving discrimination based on national origin. The assertion that the Minority Incentive Fund proves that the Uni-

versity discriminated here is innovative, particularly because there is no evidence that the Fund subsidized Puleo, the candidate chosen. The assertion that the affirmative action policy is evidence of discrimination is also unsupported. "The mere existence of such a plan ... is not sufficient for plaintiff to meet his burden of identifying a material issue of fact." *Cianfrano*, 851 F.Supp. at 49. The defendant's policy of preferring a minority or female candidate is activated only after defendant conducts a selection process based on the qualifications and credentials of each applicant. This argument will not defeat summary judgment. *Goenaga*, 51 F.3d at 18.

Plaintiff further alleges that there were several irregularities in the search procedure for the new director. The most significant of plaintiff's claims is that the defendant's requirement of a complete search prior to the appointment of a permanent director is selectively applied, creating an inference of discrimination. To support this argument, plaintiff points out that the Vice–President attempted to appoint Ms. Boyd without conducting a search. However, Ms. Boyd was never appointed because the rest of the department would not allow an appointment for this position without the required search. If anything, this argument, it would seem, cuts against plaintiff's contentions. Plaintiff also alleges that defendant disregarded the search procedures in the hiring process for certain minority and female faculty candidates, but documentary evidence[2] submitted by the defendant disproves this claim.

In addition, plaintiff claims the model class he taught as part of his interview was a "sham," because of poor student turnout and the fact that he had to teach a different section from the other candidates. These irregularities were probably the result of a snowstorm on the day of plaintiff's interview. Further, such claims fail to impact on the defendant's reasonable and legitimate rationale and hardly established the pretextual motives of the decision.

Plaintiff also points out the fact that three members of the search committee do not

speak Spanish. This argument again does not raise a triable issue of fact. The committee consisted of the same five members for all three candidates, and as stated above, the court will not second guess an entity's business decisions. *See Dale*, 797 F.2d at 464.

As to rumors, plaintiff contends everyone knows that the Vice–President who appointed the committee was biased against him. Plaintiff claims that graduate students in the department told him that Vice–President Meisel did not want to reappoint him. However, as defendant points out, this court cannot rely on hearsay evidence. Such evidence "cannot be used under rule 56(e) to stave off summary judgment." *Corrigan v. New York University Medical Center*, 606 F.Supp. 345, 348 (S.D.N.Y.1985).

The plaintiff in the present case does not raise a triable issue of fact. Here, plaintiff's assertions of discrimination based on national origin are founded on incomplete factual statements and hearsay evidence. Summary judgment is granted and the complaint dismissed.

SO ORDERED.

---

**2.** The evidence submitted includes various sealed intra-university correspondence and memoranda which relate to the defendant's hiring practices.