**Jane E. MULQUEEN, as Administratrix of the Estate of Francis J. Mulqueen, Jr., Plaintiff,**

v.

**DAKA, INC., Defendant.**

No. 93–CV–642.

United States District Court, N.D. New York.

Dec. 13, 1995.

Daniel R. Burke, East Nassau, New York, for Plaintiff.

Menard, Murphy & Walsh, Boston, Massachusetts (John Edward Coyne, of counsel), for Defendant.

### MEMORANDUM DECISION AND ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION.

On May 21, 1991, Francis J. Mulqueen, Jr. was terminated from his position at defendant Daka, Inc., where he was employed as a food service manager. He died approximately two and one-half years later on November 10, 1993. His daughter, Jane Mulqueen, as Administratrix of his estate, brought suit pursuant to 42 U.S.C. § 2000e, claiming that the defendant terminated his employment solely due to his age, in violation of the Age Discrimination in Employment Act ("ADEA"). See 29 U.S.C. § 626 et seq. The action was tried in Albany, New York, on September 18, through 21, 1995, at the conclusion of which the jury returned a favorable verdict to the Estate in the amount of $102,502.34 for past lost earnings including fringe benefits. Judgment was entered accordingly on September 22, 1995.

Plaintiff [1] now moves for an award of prejudgment interest from November 10, 1993, to September 22, 1995, and for an award of

---

1. For purposes of clarification and simplicity, the court will refer to Francis J. Mulqueen, Jr. as the plaintiff.

attorney's fees and expenses. 29 U.S.C. § 626(b). There is no opposition from the defendant.

Daka, Inc. has likewise filed post trial motions. It seeks judgment in its favor as a matter of law pursuant to Fed.R.Civ.P. 50(a), or in the alternative, a new trial pursuant to Fed.R.Civ.P. 59.

Oral argument was held in Utica, New York, on November 9, 1995. The court reserved decision. Since the results of the defendant's motions will have implications on the plaintiff's motions, defendant's motions will be addressed first.

## II. DISCUSSION.

The Supreme Court has determined that ADEA cases will be subject to and follow the law of Title VII cases. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Thus, the starting point in determining the outcome of an ADEA case is—as with Title VII cases—the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] There the Supreme Court set out a three step process, allocating burdens of production and persuasion.[3] The first of these steps—that of proving a prima facie case—belongs to the plaintiff. One of the methods in which plaintiff *may* satisfy his burden is by coming forth with proof of the following: "(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking appli-

cants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.[4] Defendant's motions hinge upon whether the plaintiff has fulfilled his burden with regard to the second of these four *McDonnell Douglas* elements.

### A. Establishment of a Prima Facie Case.

■ Proving a prima facie case requires only a *de minimis* showing that there exists a triable issue of fact, *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65–66 (2d Cir.1995) ("plaintiff's burden of proof in a . . . discrimination action is *de minimis* at the prima facie stage, . . ."); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988), so that the court may focus its attention on "the ultimate question of discrimination *vel non*." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

Defendant argues that the plaintiff has failed to show even a *de minimis* amount of evidence supporting his qualification for the job. In support of this argument, defendant alleges that the proper standard to be used in determining whether the "qualified" element of a prima facie case has been established is "whether the employee was doing

---

**2.** This case cannot directly parallel *McDonnell Douglas* due to the inherent difference in the nature of its claim. Specifically, *McDonnell Douglas* focused upon a failure to hire, while the case at bar addresses a discriminatory discharge. The manner in which the Second Circuit will treat a discriminatory discharge case differently from a failure to hire case will be discussed *infra*.

**3.** First plaintiff must prove a prima facie case of discrimination. If plaintiff succeeds in showing a prima facie case, then defendant must articulate a legitimate nondiscriminatory reason for the discharge. Finally, once defendant articulates such a reason, plaintiff must prove that discrimination was the substantial or motivating factor in the discharge (pretext analysis). *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802, 804, 93 S.Ct. at 1824, 1825).

**4.** The word "may" is highlighted to make note of the fact that this method of proving a prima facie case may not be the only way of so proving. A prima facie case of discrimination is nothing more than a rebuttable presumption. An inference has been created. Certainly where direct proof of discrimination is shown, no inference is necessary. *See Hagelthorn v. Kennecott Corp.*, 710 F.2d 76 (2d Cir.1983). Likewise, where one of the four factors referenced in the *McDonnell Douglas* prima facie case is not at issue in the particular factual scenario at issue (for example a case where a discharge was based upon elimination of a position would not require showing a subsequent hiring in order to create an inference of discrimination) requiring its proof would be unnecessary to establish a prima facie case. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012–13 (1st Cir.1979).

the job well enough to 'meet his employer's [the Defendant's] legitimate expectations.'" *Charrette v. S.M. Flickinger Co.*, 806 F.Supp. 1045, 1056 (N.D.N.Y.1992) (quoting *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)); *see also Huhn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir.1983). However, these cases, and the line of cases from which they draw support, lack the clarity, specificity, and foundation to establish this view as the present state of the Second Circuit's definition of prima facie "qualified," in discriminatory discharge cases as will be discussed *infra.*

On the other hand, at least four Second Circuit cases have specifically addressed the issue since the Supreme Court rendered its decision in *McDonnell Douglas* enumerating the elements of a prima facie case. The first of these was the case of *Powell v. Syracuse Univ.*, 580 F.2d 1150 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978). Released five years after *McDonnell Douglas*, it examined whether the plaintiff, a black female part-time visiting assistant professor with the Architecture Department at Syracuse University was terminated based upon race or sex. *Id.* at 1151. The district court dismissed the action, finding that plaintiff had failed to establish two items of the *McDonnell Douglas* prima facie case: that she was "qualified" to teach on the faculty, and that other persons with similar qualifications were subsequently hired. *Id.* at 1155.

The Second Circuit directly addressed the issue with which we now deal. The Court stated:

We believe that the trial court applied an erroneous legal standard in reaching these conclusions. . . .

With respect to the first of the court's findings [that plaintiff was not qualified], we believe that the court's approach unnecessarily collapses the steps suggested by *McDonnell Douglas* by shifting considerations which are more appropriate to the employer's rebuttal phase to the earlier requirement that the employee demonstrate competence to perform the specified work. This is not merely of formal consequence, for it has the practical effect of requiring the employee to prove not merely that he possesses the basic skills necessary for the job, but rather that he is the best-qualified candidate for the job, under the criteria suggested by the employer. As can be seen in the present case, this burden is extremely difficult to meet if the employer's claim that the employee did not meet some unstated level of performance is sufficient to negate the employee's offer of proof.

*Id.* By stating, "[W]e believe that the court's approach unnecessarily collapses the steps . . . by shifting considerations which are more appropriate to the employer's rebuttal phase," *id.*, the Second Circuit specifically delineated the limited nature of the "qualified" element of a prima facie case, finding little room for proof of performance at that stage. The Circuit sought to keep the status of proving a prima facie case to a *de minimis* showing.[5] The Second Circuit in *Powell* continued, "If an employer is dissatisfied with the performance of an employee, he can

---

5. Note that the Second Circuit did not totally abrogate use of performance when showing qualifications. It referenced the Seventh Circuit's analysis of performance and agreed with it in a limited sense. The *Powell* Court continued:

> In this respect, we agree with the Seventh Circuit's view that under *McDonnell Douglas* '[t]he plaintiff need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him.

> . . . . .

> Satisfactory performance is an ordinary prerequisite of continued employment, just as job

qualification is an ordinary prerequisite to hiring. [citation omitted.] However, the plaintiff need not, and indeed cannot, disprove as a cause of his discharge a source of dissatisfaction of which he is unaware. Accordingly, the employer's acceptance of his work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof.' [*Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir.1977).]

*Id.*

properly raise the issue in rebuttal of the plaintiff's showing.... [Plaintiff] has demonstrated that she possesses the basic skills necessary for the performance of her job, and has thereby made out a prima facie showing of competence." *Id.*

The Second Circuit has thus made it clear that an employer's legitimate expectation of performance has no place in determining qualification at the prima facie stage of the case, as the defendant suggests. Other Second Circuit cases interpreted the prima facie case analysis as well.[6]

Finally, in *Owens v. New York City Housing Auth.*, 934 F.2d 405 (2d Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991), an ADEA case, the Second Circuit reviewed a decision of the district court dismissing plaintiff's claim for her failure to establish that she was qualified for the

---

**6.** The case of *Hagelthorn* involved claims under the ADEA. Plaintiff was awarded a verdict which was reduced and then doubled due to a finding of willfulness. 710 F.2d at 77. Defendant appealed the denial of motions for summary judgment, directed verdict and judgment n.o.v. *Id.* The court, in its affirmance of the denial of the directed verdict motion, noted that plaintiff's prima facie case was established using direct evidence. *Id.* at 81.

In a troubling quip of dicta, the court noted, "Because Hagelthorn was relying on this direct evidence, and not merely trying to create an inference of an illegitimate reason by eliminating 'all legitimate reasons ... as possible reasons for the employer's action,' he was not required to eliminate altogether the possibility that Kennecott [the employer] regarded his performance as below its legitimate expectations." *Id.* However, in its discussion of the jury charge, the court found that the jury was not misled by a failure to clarify which party held the burden to show a prima facie case. *Id.* at 85. In so finding, they stated, "First, we agree with the district court that Hagelthorn's basic qualifications—his knowledge of business practices and machines, his education, his experience and his basic intelligence—were not at issue." *Id.* at 85–86. The court, in walking through these factors to show the "qualification" element of a prima facie case, did not mention performance. *Id.* They continued, "Second, as we noted above, although Kennecott was not required to prove its claim that Hagelthorn's poor performance and attitude rendered him unqualified for his position, neither was Hagelthorn required to disprove this claim. He was required to prove only that, even if performance and attitude were factors in his termination, nevertheless he would not have been fired but for his age." *Id.* at 86. This discussion is obviously couched in the framework of the second two prongs of *McDonnell Douglas.* The court is stating that Kennecott must merely articulate a legitimate reason for termination, and Hagelthorn must then prove that discrimination was the substantial or motivating factor in his termination. This ambiguity as to whether the court is addressing the satisfaction of a prima facie case, or the articulation of a legitimate nondiscriminatory reason for the termination—i.e. whether the court is addressing the first tier of *McDonnell Douglas* or the second—arises in many cases.

In *Gibson v. American Broadcasting Co.*, 892 F.2d 1128, 1131 (2d Cir.1989), the Second Circuit found, based upon allegations in the pleadings, that a prima facie case had been established and that plaintiffs were qualified. It should be noted that this case was a review of a summary judgment motion. *Id.* The court therefore read all questions of fact in favor of the nonmovant, thereby simplifying a determination of a prima facie case. *Id.* The Second Circuit moved then to the analysis of whether the defendant's proffered reasons were substantial or motivating factors of the decision to terminate plaintiff or whether they were unworthy of credence. *Id.* at 1131–34. The court, in its discussion, sought to distinguish this analysis from that of determining the existence of a prima facie case. *Id.* at 1131. In doing so, the court cited the following cases and noted in parenthetical: "*Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097 (fact that court believes employer misjudged applicant's qualifications does not itself demonstrate discrimination, but misjudgment is probative on whether articulated reason is pretext); *Sweeney v. Research Foundation of St. Univ. of N.Y.,* 711 F.2d 1179, 1185 (2d Cir.1983) (employer's articulated subjective evaluation of qualifications by itself not adequate because it may mask prohibited discrimination); *Knight v. Nassau County Civil Service Comm'n,* 649 F.2d 157, 161 (2d Cir.1981) (employer may not use wholly subjective and unarticulated standards to judge employee performance.)" *Id.* at 1132–33. Subjective evaluations of performance therefore must be evaluated in the framework of the third *McDonnell Douglas* prong—whether defendant's reason is pretextual.

Along these lines, several other Second Circuit cases have noted that tests can only make distinctions between those qualified and unqualified but cannot come close to being able to predict an applicant's performance on the job. *Guardians Ass'n of New York City Police Dep't v. Civil Serv. Comm'n,* 630 F.2d 79, 100 (2d Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981); *Guardians Ass'n of New York City Police Dep't v. Civil Serv. Comm'n,* 633 F.2d 232, 244 (2d Cir.1980), *aff'd,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *Vulcan Soc'y of New York City Fire Dep't v. Civil Serv. Comm'n,* 490 F.2d 387, 396 (2d Cir.1973); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460 (2d Cir. 1989) (failure on driving test does not preclude discrimination in issuance of test).

position, and therefore, for her failure to make out a prima facie case. *Id.* at 408. Specifically, the district court found that a state court determination of misconduct collaterally estopped plaintiff from proving the "qualification" element of her prima facie case. *Id.* The Second Circuit disagreed. *Id.* at 409. They found no identity of issue between the finding of misconduct and the finding of qualification—required for collateral estoppel to apply. *Id.* The court stated, "*McDonnell Douglas* requires only a minimal showing of qualification to establish a prima facie claim. Owens only needs to demonstrate that she 'possesses the basic skills necessary for performance of the job.' " *Id.* (quoting *Powell,* 580 F.2d at 1155.) The court continued:

> The state court never passed on Owens' competence to perform her work. Rather, it upheld the Trial Officer's findings of misconduct and 'gross insubordination.' We have no doubt that such misconduct may certainly provide a legitimate and nondiscriminatory reason to terminate an employee. This misconduct is distinct, however, from the issue of minimal qualification to perform a job. *An individual may well have the ability to perform job duties, even if her conduct on the job is inappropriate or offensive.*

*Id.* (emphasis added) (internal footnote omitted).

Again the Second Circuit sought to distinguish between a showing of qualifications for a job and performance on a job. A qualified employee for the purposes of proving a prima facie case, may still undertake "conduct on the job [that] is inappropriate or offensive." *Id.* A surgeon may be eminently qualified for a hospital position. Yet his daily tardiness or rude treatment of patients while performing his rounds would certainly provide the hospital with legitimate nondiscriminatory reasons for termination. This poor performance, however, must be evaluated in the second and third stages of the *McDonnell Douglas* framework. Such reasons cannot preclude the plaintiff from his day in

court at the prima facie stage where the plaintiff's burden is merely *de minimis.*

Based upon the above analysis, the Second Circuit stance on this issue is that a prima facie case may be established with little more than a showing of the skills needed to perform the job, and this has been more than established.

### 1. "Performed the Job Satisfactorily"

It remains incumbent upon this court to identify the flaws in the premise that the defendant forwards. There are three Second Circuit cases since the 1973 Supreme Court determination in *McDonnell Douglas* that have actually referenced or renamed the *McDonnell Douglas* "qualification" item as "performed the job satisfactorily." *See Quaratino,* 71 F.3d at 65–66; *see also Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29 (2d Cir.1994); *Meiri,* 759 F.2d at 995.[7] However, it is not at all clear that these cases attempted a reworking of the law or the definition of "qualified." Rather, it appears that the defendant's argument finds its foundation in other Circuits; particularly the First and Seventh.

### a. Renaming of the "Qualified" Element

The three cases mentioned merit a quick review to determine why such language was used. Looking first to the *Quaratino* case, the court stated:

> A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she *satisfactorily performed the duties required by the position;* (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee.

*Quaratino,* 71 F.3d at 63 (emphasis added). The Court cited to only *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, and *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, in support of its captioning. Yet neither of these cases either name the "qualified" ele-

---

7. Defendant cites to *Meiri,* as well as the district court case of *Charrette* for his argument that proof of satisfactory performance on the job should be included in the evidence required to establish a prima facie case.

ment thus or deal with a failure on the part of the plaintiff to satisfy its prima facie case due to a failure to show that she met the employer's legitimate expectations. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 ("we agree with the Court of Appeals that respondent proved a prima facie case.... Petitioner, moreover, does not dispute respondent's qualifications and acknowledges that his past work performance in petitioner's employ was 'satisfactory.'"); *Burdine*, 450 U.S. at 260, 101 S.Ct. at 1097 (Court of Appeals judgment vacated and remanded due to the placement of too heavy a burden upon the defendant in not only articulating, but proving, its legitimate nondiscriminatory reasons for termination; a prima facie case was proven and not at issue).

Dealing next with the 1994 case of *Chambers*, the court stated in a similar nature to *Quaratino*:

> In order to establish a prima facie case of discriminatory discharge, the plaintiff must show (1) that he belongs to a protected class; (2) *that he was performing his duties satisfactorily*; (3) that he was discharged; and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class.

43 F.3d at 37 (emphasis added). There, support was forwarded for their restatement of the rule. However, the support lacks strength.[8]

Finally, focusing on the third of this line of cases, *Meiri* appears to have begun the con-

---

**8.** The case cites to five separate Second Circuit cases in support of its itemization of the four requisite factors for proving a prima facie case. All five of those cases listed the "qualification" factor as "qualified for the position." *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991); *Ramseur*, 865 F.2d at 464; *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987); *Dister*, 859 F.2d at 1114–15; *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir.1983). None of them titled it "performed the job satisfactorily," or anything to that accord. Three of the five did not even have job performance as an issue in the case. *See Rosen*, 928 F.2d 528 (employee failed driving test and was therefore found by the district court to be not qualified because he lacked a required skill; however Second Circuit reversed, finding that the issue was discrimination in the actual testing of his driving skills); *Dister*, 859 F.2d 1108 (plaintiff's job was allegedly eliminated based upon economics; there was no issue of performance involved in the case); *Pena*, 702 F.2d at 324 (no issue of performance; prima facie case not proven when plaintiff was not discharged, but instead resigned).

The remaining two cases cited, *Ramseur* and *Lopez*, did look to satisfactory performance in determining whether the plaintiff was qualified. However, such reliance by itself does not elucidate the answer to our question. It remains unclear whether the discussion of performance was meant as proof that the "qualification" item of a prima facie case was shown, or that defendant's proffered legitimate reason for terminating plaintiff was sound, i.e., whether the court had moved on to the second or third tier of the *McDonnell Douglas* framework before reviewing job performance. Often, the articulated legitimate reason given by the defendant is that the plaintiff's performance was less than satisfactory. Courts have tended to analyze the two separate *McDonnell Douglas* steps in one paragraph (i.e., the questions of whether plaintiff was qualified and whether defendant really did discharge the

plaintiff for unsatisfactory performance might both be addressed by describing the work he did on the job). *See Ramseur*, 865 F.2d at 465–66 (discussion of performance comes under separate section discussing larger picture of the existence of discrimination). The court in *Ramseur* referred to the "qualified" element of the prima facie case as, "qualified for the position," then moved on to outline the second and third *McDonnell Douglas* steps, i.e., the defendant's burden of articulating legitimate nondiscriminatory reasons for the discharge, and plaintiff's burden of proving that discrimination was a substantial or motivating factor. *Id.* at 464–67. Only then did a discussion ensue of job performance, and then it was under the caption *The Availability of Inferences Sufficient To Present Triable Issues of Fact. See id.* at 465–66. This appears to have been a discussion at the third stage of the *McDonnell Douglas* framework. This caption opens a discussion of summary judgment which could take place at any stage of the framework. Plaintiff could have proven a prima facie case, followed by defendant articulating a legitimate reason. If at that point no argument was presented that the reason is pretext, or that discrimination was the substantial or motivating factor, no triable issue of fact would exist and summary judgment would be appropriate.

The other of the two cases cited is *Lopez*. In finding that summary judgment for the defendant was improper, the court stated, "The record indicates that Lopez adequately performed his job as District Sales Manager for seven years and received satisfactory reviews, salary increases, and some commendations. Hence a genuine factual issue as to his qualifications for this position has been raised." *See Lopez*, 831 F.2d at 1188.

Neither case cites to a defining case on this matter, although *Ramseur* cites to *Meiri*—the third of the cases we must discuss.

fusion in this area of law in the Second Circuit. With citation to nothing other than *McDonnell Douglas*, this case appears to be the first to rename the "qualification" item, calling it instead, "that her job performance was satisfactory." *Meiri*, 759 F.2d at 995.

Only further into the opinion does the Second Circuit explain the source of this captioning. Subsequent to listing the elements of a prima facie case, the opinion later deals specifically with the element "performance was satisfactory," and there explains from where it extracts the definition of the *McDonnell Douglas* item "qualified," as "satisfactory job performance." *See id.*

The *Meiri* Court relied upon the Seventh Circuit cases, *Huhn*, 718 F.2d at 244, and *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980),[9] in stating that "the ultimate inquiry is whether an employee's performance 'meets his employer's legitimate expectations.'" *Meiri*, 759 F.2d at 995 (quoting *Huhn*, 718 F.2d at 244). On its face, it is unclear what the Second Circuit intended in using its language, "ultimate inquiry." Was that language used to refer to the finding of "qualified" in establishing a prima facie case? On the other hand, was the language "ultimate inquiry" used to mirror the Supreme Court in *Aikens* when it referred to "the *ultimate question* of discrimination *vel non.*" *Id.* at 714 (emphasis added). The *Aikens* Court said "The prima facie case method ... was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience

as it bears on the critical question of discrimination.'" *Id.* at 715 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1982)) (emphasis added).

Subsequent case law from the Second Circuit has clarified the confusion. Specifically, the court rejected the requirement that plaintiff prove he or she met the employer's legitimate expectations of performance in establishing a prima facie case. *See Powell*, 580 F.2d at 1155; *see also Owens*, 934 F.2d at 409.[10]

### b. *The Source of Defendant's Premise*

So while the Second Circuit in *Meiri* did not intend a severe shift in the definition of "qualified," the two Seventh Circuit cases of *Huhn* and *Kephart*, upon which *Meiri* relies intended just that. Their language is precise and unambiguous. Those cases rely in turn upon the First Circuit case of *Loeb*, 600 F.2d 1003, and it is *Loeb* that appears to be the genesis of the practice of using job performance in proof of qualification. Thus rather than focusing on the rationale behind the Seventh Circuit's case law, a jump directly to an analysis of the *Loeb* case in the First Circuit would prove more direct.

The First Circuit first reiterated the Supreme Court's own analysis, stating that the four items listed by the Supreme Court in *McDonnell Douglas* were fact specific to produce an inference that would withstand the most common rebuttals. *Id.* at 1011, 1013.[11] The First Circuit then reasoned that:

---

**9.** *Kephart* was also heavily relied upon by *Huhn*. The *Meiri* court also cited to *Reich v. New York Hosp.*, 513 F.Supp. 854, 859 (S.D.N.Y.1981), when restating the qualification element of the prima facie case. 759 F.2d at 995. *Reich's* recitation of the elements of the prima facie case includes "3) she was qualified for the position from which she was excluded." 513 F.Supp. at 859. This therefore does not lend support to the qualification element consisting of performance meeting the employer's legitimate expectations. In a similar manner the court's statement that a plaintiff should not be denied an opportunity to prove that the employer's demands regarding performance were not reasonable does not support a change in the "qualification" element of the prima facie case. *See id.* at 860. There the court was merely finding that the plaintiff had

raised a genuine issue of material fact as to her prima facie case. *Id.*

**10.** It is not clear whether some form of performance must still be shown, although at a *de minimis* level. *See* discussion *infra*.

**11.** The First Circuit explained that "the prima facie case [described in *McDonnell Douglas*] is based on the notion that by ruling out the more obvious job-related reasons for not hiring [plaintiff], a Title VII complainant can create an inference of some tainted reason, i.e., some discriminatory reason, sufficient to require the employer to articulate a legitimate reason for the complainant's rejection." *Loeb*, 600 F.2d at 1013.

The Supreme Court had earlier explained as follows:

To apply [that flexibility] concept in the present case, which involves firing, not hiring, the critical elements (beyond being within the protected class ... and fired) must be modified to produce an analogous inference. Complainant would be required to show that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative.

*Loeb,* 600 F.2d at 1013. The First Circuit thus counseled the exact practice that the Second Circuit forewarned against. The Second Circuit had stated:

[W]e believe that the [trial] court's approach unnecessarily collapses the steps suggested by *McDonnell Douglas* by shifting considerations which are more appropriate to the employer's rebuttal phase to the earlier requirement that the employee demonstrate competence to perform the specified work.

*Powell,* 580 F.2d at 1155.

The First Circuit then continues, immediately noting, "We can assume that, unless the employee's job has been redefined, the fact that he was hired initially indicates that he had the basic qualifications for the job, in terms of degrees, certificates, skills and experience." *Loeb,* 600 F.2d at 1013 n. 10. The First Circuit was apparently of the opinion that such a seemingly obvious point (i.e., hiring qualifications for a presently employed worker) would not further bolster the sought after inference in a discharge case, and would therefore serve no purpose in establishing a prima facie case. *See id.* at 1013–14. The First Circuit concluded that the "qualifications" item must then mean something more. *Id.* at 1014.

However, this presumes that initially holding the job from which a plaintiff was terminated proves he was qualified at that time, and that requiring plaintiff to prove such a point would add nothing to proving a prima facie case. Yet, changes in abilities, whether through physical injury or otherwise, failure to take refresher courses and training, or any changes in circumstances yet unnamed, can transform someone qualified for a position some years earlier, to a point where he is no longer qualified for that position.

No Second Circuit case has adopted the *Loeb* definition, nor defined the "qualifications" item of a prima facie case as extremely as did the First and Seventh Circuits. Any Second Circuit case showing a lean toward use of an employer's expectations of plaintiff's job performance spawns directly from the Second Circuit case of *Meiri* which in turn relied upon the Seventh Circuit cases, and through them, the First Circuit case of *Loeb.*

But it is clear that *Meiri* says nothing more than when analyzing a discriminatory discharge case, performance will come into play. *See* 759 F.2d at 995. It does not say—as the Seventh and First Circuits did—that in order to establish a prima facie case of discrimination in such a case, performance must be shown to be subjectively satisfactory. *See Huhn,* 718 F.2d at 244; *see also Kephart,* 630 F.2d at 1223; *Loeb,* 600 F.2d at 1013.

### B. *Defendant's Motions.*

#### 1. *Defendant's Motion for Judgment as a Matter of Law.*

##### a. *Prima Facie Case*

Returning now to the source of the above discussion, defendant first argues in support of its motion for judgment as a matter of law, that plaintiff has failed to establish the second element of his prima facie case.

This court found, as a matter of law, that plaintiff demonstrated that he possessed the basic skills necessary to perform his job and

Our decision in [the *McDonnell Douglas*] case, ... did not purport to create an inflexible formulation. We expressly noted that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." ... [A]ny Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.
*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (quoting *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13).

therefore he had established a prima facie case. *See Powell*, 580 F.2d at 1155 (plaintiff need only "demonstrate[ ] that [he] possesses the basic skills necessary for the performance of [his] job [to make] out a prima facie showing of competence"). During the court's charge, the jury was instructed that plaintiff was qualified as a matter of law. Ample evidence exists to support this finding.

■ The testimony of both the plaintiff's daughter, Jane Mulqueen, who also worked for the defendant for a number of years, and Colleen Byrnes, an assistant food service manager to plaintiff the year of his termination, established that plaintiff performed his work satisfactorily. Management performance appraisals for the years 1982–1988, marked as D–23(a) through D–23(g), were additional evidence that his performance satisfied defendant's expectations. Defendant's failure to produce the appraisals for the two years which immediately preceded the termination supports an inference that plaintiff's performance continued to be satisfactory during those two years. Testimony was admitted that the plaintiff corrected problems pointed out to him, and that the only evidence critical of his performance existed prior to the numerous admitted commendations and reports. Testimony was taken that the plaintiff's responsibilities were increased only eight months prior to termination. There was additional testimony that he was a hands-on-manager. Plaintiff produced an exhibit identified as P–14 from the president of Daka, Inc., Allen Maxwell, dated September 17, 1990, complimenting him on his performance. He produced a letter from the former vice president complimenting him on a good job. He produced reports regarding worker safety marked as P–28 and P–29, stating that plaintiff had suffered no accidents on the job. He produced a letter marked P–31 from Joe Smyth saying, "Keep up the good work," and a letter marked P–32 also from Joe Smyth complimenting him on a good job.

Evidence of salary increases, profitability bonuses, satisfactory performance evaluations, congratulatory memos, and the assignment of responsibility for the RPI Field House concession operations, all show that plaintiff satisfied his *de minimis* burden.

In fact, even in the event that the term "qualified" were to mean "the employer's legitimate expectations of performance," as the defendant argued, the evidence listed above more than satisfies a *de minimis* showing that his performance satisfied the legitimate expectations of the defendant. The several commendations, positive reports, and letters create an inference of satisfactory performance, thereby proving a prima facie case. The defendant is still entitled to articulate plaintiff's performance as a legitimate nondiscriminatory reason for termination at the next stage of the *McDonnell Douglas* framework.

### b. *Willful v. Intentional Conduct*

In support of this motion, defendant next argues that the jury's finding that the termination was because of age, cannot be read in conformity with the finding that the termination was not willful.[12]

■ The ADEA provides that willful violations of the act will subject the employer to liability for liquidated damages. 29 U.S.C.A. § 626(b) (1985). A violation is willful where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83

---

**12.** The jury was charged with the following instruction on willfulness: "The defendant acted willfully if it deliberately, intentionally, and knowingly terminated plaintiff because of his age, and if it knew that such conduct was unlawful or showed reckless disregard for the legality of such conduct."

The jury was then asked the following questions in a series of interrogatories on a verdict form, and gave the following answers:

1. Do you find that defendant discriminated against plaintiff by terminating his employment based upon his age as a significant factor?
     Yes _X_ No ____

. . .

3. Do you find that the actions of the defendant were willful?
     Yes ____ No _X_

L.Ed.2d 523 (1985). According to defendant, at trial it was undisputed that plaintiff's termination was deliberate, intentional, and knowing. The issue is whether the jury could have found that the defendant did not know that "its conduct was prohibited by the statute." *Hazen Paper*, 507 U.S. at 617, 113 S.Ct. at 1710. Defendant asserts that it never claimed or argued "ignorance of the law [or] that it did not know its discharge of the plaintiff because of age would violate the law." (Def.'s Mem. at 6.) Defendant insists, therefore, that the jury could not have made the determination of nonwillfulness, since the defendant never affirmatively argued it. It must be remembered that it is not the verdict form questions alone, or certain parts of the jury charge standing alone, that must be examined. Rather, the charge as a whole must be viewed along with the entire trial record in determining whether error has occurred. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

The two tiered liability scheme discussed in *Thurston* and *Hazen Paper* consists of intentional conduct and knowledge that such conduct is in violation of the ADEA. Under this scheme, conduct which is a violation of the ADEA because it is intentional, may or may not be acted out with the knowledge that such conduct is in violation of the act.

■ The plaintiff was perfectly willing to allow the jury to decide these matters. The jury determined that plaintiff was intentionally discharged on the basis of age. The fact that the jury also found that defendant's conduct was not willful, i.e. acting with knowledge that such conduct violated the act, does not conflict with its finding of intentional conduct.[13]

### 2. *Defendant's Motion for a New Trial*

Defendant contends that an erroneous jury charge prevented the jury from considering whether plaintiff's work performance satisfied defendant's legitimate expectations at the time of discharge.[14] Defendant takes issue with the Court's finding as a matter of law that plaintiff was "qualified," for the purposes of proving a prima facie case. Defendant argues that "[a]s a result [of the Court's finding], the plaintiff was not required to prove an essential element of his prima facie case *i.e.* [sic] that he was qualified." (Def's Mem.Supp.Mot. at 8.) As with its motion for judgment as a matter of law, defendant insists that the term "qualified" does not mean the plaintiff's twelve year tenure or his performance during those twelve years. Rather, defendant argues that a qualified employee is one who meets the

---

**13.** The more appropriate inquiry might be whether a finding of intentional violation by the jury required a finding of willfulness as a matter of law. However, the plaintiff failed to make a request or objection to the court's charge despite the defendant's now admitted failure to raise a defense of good faith. *See Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826 (2d Cir.1992) ("Where a party presents no evidence to support a particular theory of his case, he has no right to a jury instruction on that point.") Nor did plaintiff move for a judgment of liquidated damages as a matter of law either at the close of the evidence in the event of an affirmative finding of intent, or post-trial after the jury made such a finding. *See Dittmann v. Ireco, Inc.*, 903 F.Supp. 347, 352 (N.D.N.Y.1995) ("defendant's failure to raise ... a legitimate 'good faith and nonreckless' defense, compels a finding that defendant willfully discriminated against the plaintiff on the basis of his age in violation of the ADEA.") Thus, the court need not address whether a finding of willfulness as a matter of law would have been appropriate.

**14.** The court charged the jury as follows:

The plaintiff must prove each of four elements and must do so by a preponderance of the evidence to establish a prima facie case of discharge resulting from age discrimination. He must show, through direct, statistical, or circumstantial evidence, (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination. Plaintiff has established the first, second and third points. Plaintiff was hired at approximately age 48 and terminated at age 60, thereby placing him within the protected class and effecting the requisite discharge. His twelve year tenure with the company establishes his qualification for the position. It is not an automatic violation of the Age Discrimination in Employment Act to terminate an employee who is over 40 years of age if the reason for doing so is unrelated to the employee's age. All four factors must be shown for the plaintiff to establish a prima facie case of discrimination.

legitimate job expectations of an employer at the time of the discharge.

As discussed in detail above, plaintiff need not show that the employer was satisfied with his performance. Furthermore, only a *de minimis* showing must be presented to prove a prima facie case. This court determined that plaintiff was qualified for the purposes of proving his prima facie case based upon ample evidence. Additionally, this court's emphasis of the plaintiff's twelve year tenure as support for a finding that he was prima facie qualified for the position was not meant as a statement that a certain number of years of service, standing alone, may establish prima facie qualification. If error was committed by the court's reference to plaintiff's twelve year tenure at the job as support for such a determination, without enumerating an exhaustive list of the other evidence supporting such a conclusion, then that error was harmless. Reference has been made *supra* to a myriad of evidence supporting not only plaintiff's qualifications, but his satisfactory performance, and defen-

dant's approval of such performance. Certainly enough was presented to surpass the *de minimis* standard set for proving a prima facie case.

Defendant also argues that the same erroneous jury charge prevented the jury from considering defendant's nondiscriminatory reasons for discharge. Defendant notes the testimony of one Leo Titus who claimed that plaintiff was fired because of his unsatisfactory work performance rather than his age.

The charge was specific in finding that plaintiff was qualified for the purposes of proving a prima facie case. However, it never removed from the jury the issue of whether plaintiff was fired for his performance or for his age. In fact, the charge made every effort to clarify both the defendant's position, and the plaintiff's burden. The charge detailed how the jury needed to weigh the reasons given by the defendant, such as the allegation by Mr. Titus that the plaintiff performed unsatisfactorily, and determine whether the reasons were legitimate or just pretext.[15] Defendant fails to note

---

**15.** The court continued with its charge to the jury as follows:

> If successful in proving by a preponderance of the evidence the existence of these four elements, the plaintiff has established discrimination by the defendant.
>
> The defendant has articulated legitimate non-retaliatory reasons for its decision to discharge plaintiff; that is, reasons other than discrimination. It has explained that plaintiff's performance had diminished over the years and had not been up to company standards at the time of his termination. The defendant does not have to prove by a preponderance of the evidence that its legitimate reasons actually motivated its decision. It need only produce enough evidence in support of its claim to create a genuine issue of fact in your mind.
>
> Since the defendant produced evidence admitted at trial, tending to show a legitimate reason for terminating plaintiff—i.e. plaintiff's diminished performance—then you, the jury, must decide whether plaintiff has met his burden of proving discrimination against him. It is for the plaintiff to prove by a preponderance of the evidence that the defendant discriminated against him. You may infer that plaintiff's burden has been met if you find that all four facts listed above have been established by a preponderance of the evidence and you disbelieve the explanation put forth by defendant.
>
> Simply put, if you disbelieve the reasons put forth by the defendant (particularly if you sus-

pect that the reasons may be lies), you may combine that disbelief or suspicion with the evidence used by plaintiff in outlining the inference of discrimination, and determine that plaintiff has proved by a preponderance of the evidence that he has been discriminated against. In other words, your disbelief of defendant may play a part in satisfying plaintiff's burden of proving both the falsity of defendant's reasons and that discrimination was the real or determinative reason for defendant's actions.

> In examining whether discrimination was a determinative factor in defendant's decision, you should consider the reasonableness or lack thereof of defendant's explanation, and whether there is evidence of inconsistencies and implausibilities concerning those reasons that suggest that defendant did act in a discriminatory basis.

> Furthermore, consideration of discrimination need not be the sole factor. You may find that the plaintiff was the victim of discrimination even if you find that several factors influenced the defendant's decision to terminate him, so long as it was more likely than not that but for discrimination, he would not have been terminated. To be determinative, the reasons put forth by defendant, such as competence, qualifications or economic reasons, must be such that but for discrimination, plaintiff would not have been terminated. Therefore, plaintiff must show that discrimination was a significant contributing factor that caused his

98

that the court not only found the plaintiff to be prima facie qualified, but also found as a matter of law that the defendant had satisfied its burden of articulating legitimate non-discriminatory reasons for its termination of plaintiff. The charge specifically referenced the articulated reason and made clear on which party the burden rested.

One can prove a factor of a prima facie case and ultimately fail to persuade the trier of fact on that issue. The issue was not taken out of the hands of the jury. All that was done in finding qualified as a matter of law was to move the jury toward the second tier, and then immediately to the third tier of the *McDonnell Douglas* framework, and thus to the ultimate issue. The ultimate issue involved plaintiff's performance, so nothing was taken from them.

### C. *Plaintiff's Motions.*

Plaintiff has moved for prejudgment interest, attorney **fees, and expenses.** The defendant has not submitted any opposition addressing either motion in its motion papers.

Upon review of the motion papers presented, the court will award plaintiff prejudgment interest from November 10, 1993, to September 22, 1995, compounded annually. *See Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 281 (2d Cir. 1987); *see also Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). Prejudgment interest has been determined by annual rates of 7% in 1993, 7.75% in 1994, and 9.25% in 1995. These rates are based on the federal short term rate pursuant to the Internal Revenue Code, 26 U.S.C. § 6621, guidelines for underpayment of taxes. The total prejudgment interest award to plaintiff is, therefore, the sum of $16,413.20.

As aforementioned, plaintiff has also moved this court without opposition for an award of attorney's fees and expenses. He is seeking the sum of $30,000.00, representing 200 billable hours at the applicable court approved rate of $150.00 per hour. *See Mendoza v. City of Rome,* 162 F.R.D. 260 (N.D.N.Y.1995). In addition, plaintiff seeks to recover expenses in the sum of $862.50. Upon review, the above application is fair and reasonable.

Therefore, it is

ORDERED that

1. Defendant's motion for judgment as a matter of law is **DENIED;**

2. Defendant's motion for a new trial is **DENIED;**

3. Plaintiff's motion for prejudgment interest is **GRANTED** in the amount of $16,-413.20; and

4. Plaintiff's motion for attorney's fees and costs is **GRANTED** in the amount of $30,862.50.

The clerk is directed to enter judgment in favor of the plaintiff, Jane E. Mulqueen, as Administratrix of the Estate of Francis J. Mulqueen, Jr., and against defendant Daka, Inc. in the amount of $47,275.70.

IT IS SO ORDERED.

---

termination, and that in the absence of discrimination he would, because of his experience, skills and abilities, not have been terminated.

Should the plaintiff persuade you either that defendant's proffered reasons were pretextual, or that while defendant's reasons were valid, discrimination was a determinative factor in defendant's decision to discharge him, then you must find that the defendant discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act.

You must remember that the ultimate burden of persuasion remains with the plaintiff at all times. The critical question is whether plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated against him based upon his age.